# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| TREBCO SPECIALTY PRODUCTS INC., | ) | |
| Plaintiff, | ) ) ) | |
| v. | ) ) | Case No.: |
| THE INDIVIDUALS, CORPORATIONS, LIMITED LIABILITY COMPANIES, PARTNERSHIPS, AND UNINCORPORATED ASSOCIATIONS IDENTIFIED ON SCHEDULE A HERETO, | ) ) ) ) ) | |
| Defendants. | ) ) ) ) ) ) | |

## COMPLAINT

Plaintiff Trebco Specialty Products Inc. ("Trebco") hereby alleges as follows against the individuals, corporations, limited liability companies, partnerships, and unincorporated associations and foreign entities identified on **Schedule A** attached hereto (collectively, "Defendants"):

### Introduction

1.      This action has been filed by Plaintiff to combat online counterfeiters who trade upon Plaintiff's reputation and goodwill by selling and/or offering for sale products in connection with at least one of Plaintiff's copyrights, specifically Plaintiff's U.S. Copyright Office Registration Nos. VA0002161098, VA0002161101, VA0002161102, VA0002161097, VA0002162075, VA0002161100, VA0002161099, and VA0002161092 (the "WUBBANUB Copyrights" or "WUBBANUB Copyright Registrations").

2.      The WUBBANUB Copyrights are valid, subsisting, and in full force and effect. True and correct copies of the federal copyright registrations as shown in the United States Copyright Office's Copyright Catalogue for the WUBBANUB Copyrights are attached hereto as **Exhibit 1**.

3.      Defendants are improperly advertising, marketing and/or selling unauthorized and illegal products (the "Counterfeit Products")[1] embodying Plaintiff's copyright by reference to and/or embodying the same design as the Plaintiffs' genuine products (the "WUBBANUB Products"), which causes further confusion and deception in the marketplace.

4.      The Defendants have created numerous fully interactive commercial internet stores operating under the online marketplace accounts (the "Defendant Domain Names") and using the account names identified in Schedule A attached hereto (collectively, the "Defendants").

5.      The Defendants design the online marketplace accounts to appear to be selling genuine WUBBANUB Products, while selling inferior imitations of such products.

6.      The Defendants' online marketplace accounts also share unique identifiers, such as design elements and similarities of the counterfeit products offered for sale, establishing a logical relationship between them and suggesting that Defendants' illegal operations arise out of the same transaction, occurrence, or series of transactions or occurrences.

7.      Defendants attempt to avoid liability by going to great lengths to conceal both their identities and the full scope and interworking of their illegal counterfeiting operation. Plaintiff is forced to file this action to combat Defendants' counterfeiting of the

---

[1] Certain defendants are also improperly advertising, marketing and/or selling Counterfeit Products in association with, and promotion of, "adult content" which not only causes confusion and deception in the marketplace, but also tarnishes Plaintiff's reputation and goodwill.

WUBBANUB Copyrights, as well as to protect unknowing consumers from purchasing Counterfeit Products.

8.      As a result of Defendants' actions, including certain Defendants associating the WUBBANUB name and products with adult content, Plaintiff has been and continues to be irreparably damaged through consumer confusion, dilution, and tarnishment of its valuable copyright and goodwill and, therefore, seeks injunctive and monetary relief.

9.      This Court has personal jurisdiction over each Defendant, in that each Defendant conducts significant business in New York and in this Judicial District, and the acts and events giving rise to this lawsuit of which each Defendant stands accused were undertaken in New York and in this Judicial District.

10.     In addition, each Defendant has offered to sell and ship infringing products into this Judicial District.

## Jurisdiction and Venue

11.     This Court has original subject matter jurisdiction over the copyright claim pursuant to the Copyright Laws of the United States, 17 U.S.C. § 101 et seq., 28 U.S.C. § 1338(a)–(b), and 28 U.S.C. § 1331.

12.     This Court has jurisdiction over the unfair deceptive trade practices claim in this action that arise under the laws of the State of New York pursuant to 28 U.S.C. § 1367(a) because the state law claims are so related to the federal claims that they form part of the same case or controversy and derive from a common nucleus of operative facts.

13.     Personal jurisdiction exists over Defendants in this Judicial District pursuant to C.P.L.R. § 302(a)(1) and C.P.L.R. § 302(a)(1)(3), or in the alternative, Fed. R. Civ. P. 4(k) because, upon information and belief, Defendants regularly conduct, transact and/or solicit business in New York and in this Judicial District, and/or derive substantial revenue from business transactions in New York and in this Judicial District

3

and/or otherwise avail themselves of the privileges and protections of the laws of the State of New York such that this Court's assertion of jurisdiction over Defendants does not offend traditional notions of fair play and due process, and/or Defendants' illegal counterfeiting and infringing actions caused injury to Plaintiff in New York and in this Judicial District such that Defendants should reasonably expect such actions to have consequences in New York and this judicial District, for example:

      a.    Defendants' Merchant Storefronts accept orders of Counterfeit Products from and offer shipping to New York addresses located in this Judicial District.

      b.    Upon information and belief, Defendants were and/or are systematically directing and/or targeting their business activities at consumers in the U.S., including those in New York, in this Judicial District, through accounts with online marketplace platforms such as eBay, Amazon, Joom, AliExpress and Wish (collectively, the "Marketplace Platforms") as well as any and all as yet undiscovered accounts with additional online marketplace platforms held by or associated with Defendants, their respective officers, employees, agents, servants and all persons in active concert or participation with any of them ("User Account(s)"), through which consumers in the U.S., including New York (and more particularly, in this Judicial District), can view the one or more of Defendants' online marketplace accounts that each Defendant operates ("Defendants' Merchant Storefronts"), uses to communicate with Defendants regarding their listings for Counterfeit Products (as defined *infra)* and to place orders for, receive invoices for and purchase Counterfeit Products for delivery in the U.S., including New York (and more particularly, in this Judicial District), as a means for establishing regular business with the U.S., including New York (and more particularly, in this Judicial District).

      c.    Upon information and belief, Defendants have transacted business with consumers located in the U.S., including New York (and more particularly, in this Judicial District), for the sale and shipment of Counterfeit Products.

4

14.     Venue is proper in this Court pursuant to 28 U.S.C. §§ 1391(b)(2) and 1400(a) because Defendants have committed acts of copyright infringement in this Judicial District, do substantial business in the Judicial District, have registered agents in this Judicial District, and reside or may be found in this district.

### The Plaintiffs

15.     Trebco is a corporation incorporated under the laws of Connecticut with offices in Milford, Connecticut and is the owner of the WUBBANUB Copyright Registration, with its federal registration attached as Exhibit 1.

16.     Trebco makes its products, including its WUBBANUB products, available across the globe including in thousands of boutiques, specialty shops and major retailers.  Trebco has earned an international reputation for quality, reliability and value and is credited for a substantial breakthrough in the childcare industry in relation to pacifiers associated with plush toys, being its WUBBANUB products in particular.

### The WUBBANUB Products

17.     In March 1999, Ms. Carla Schneider, on behalf of Trebco, designed, caused to subsist in material form and first published the original WUBBANUB Product for use by her infant son.  Just a short time later, in 2000, Trebco began to commercialize the WUBBANUB Products and expanded its range, instantly attracting substantial international media attention and success.

18.     Between 1999 and 2016 Trebco obtained several copyright registrations for its WUBBANUB Products, including its "brown puppy plush", "cow plush", "elephant grey/white plush", "frog plush", "giraffe plush", "lamb plush", "little duck yellow/orange plush" and "monkey plush", each in respect of the copyright embodied by the corresponding WUBBANUB products.  Exemplary units of each of the WUBBANUB Products for which a copyright registration has been registered have been

deposited with the United States Copyright Office and remain available for inspection there.

19.     For ease of reference, the pictures below reflect relevant exemplary WUBBANUB Products for which registrations have been obtained and still remain available for sale today as part of the wider WUBBANUB Product range:



**BROWN PUPPY**

Just like the day you met your newborn, you'll fall instantly in love with WubbaNub Brown Puppy. Wide-eyed, curious, and clumsily cute, Brown Puppy loves to play and is quite content to keep your baby company all day long. The unique style of the WubbaNub pacifier allows it to remain close and easily positioned by the baby. Matching Brown Puppy Lovey also available.

*Actual product may slightly differ from image.

Item Box #22294
Item Polybag #32294


SHOP ONLINE

SHOP IN-STORE

SHOP ON WUBBANUBONLINE.COM

THINK SAFETY ›



**BABY COW**

Our shy but lovable Baby Cow loves long walks, daydreaming and becoming your baby's first friend! Baby Cow has a soft, whimsical black and white print fur and little legs that are perfect for tiny hands to hold onto when on the moo-ve! The unique style of the WubbaNub pacifier allows it to remain close and easily position by the baby.

*Actual product may slightly differ from image.

Item Box #22668
Item Polybag #32668

SHOP ONLINE

SHOP IN-STORE

SHOP ON WUBBANUBONLINE.COM

THINK SAFETY ›









## ELEPHANT

No need to pack your trunk, just bring along a WubbaNub Elephant! He's a true friend for life. Soft floppy ears are the perfect size for little hands to hold onto. The unique style of the WubbaNub pacifier allows it to remain close and easily position to baby. Matching **Elephant Lovey** also available.

*Actual product may slightly differ from image.

Item Box #22407
Item Polybag #32407



**SHOP ONLINE**

**SHOP IN-STORE**

**SHOP ON WUBBANUBONLINE.COM**

THINK SAFETY ›



## GREEN FROG

WubbaNub baby pacifier, Green Frog, is filled with boundless energy and will easily become a family favorite. His mini green legs are the perfect size for little hands to hold onto. The unique style of the WubbaNub pacifier allows it to remain close and easily position to baby.

*Actual product may slightly differ from image.

Item Box #21635
Item Polybag #31635





**SHOP ONLINE**

**SHOP IN-STORE**

**SHOP ON WUBBANUBONLINE.COM**

THINK SAFETY ›

‹  ›

CSDOCS/41279442v2





## BABY GIRAFFE

Head and shoulders above the rest, our WubbaNub Giraffe is sure to bring delight to the entire family. Soft, cuddly and so lovable it is the perfect companion to bring for baby when you are on the go. The unique style of the WubbaNub pacifier allows it to remain close and easily position to baby. Matching **Giraffe Lovey** also available.

*Actual product may slightly differ from image.

Item Box #22352
Item Polybag #32352



| SHOP ONLINE |
| SHOP IN-STORE |
| SHOP ON WUBBANUBONLINE.COM |

**THINK SAFETY** ›



## LITTLE LAMB

While we know nothing can ever replace cuddle time with your newborn, we do think our WubbaNub Little Lamb comes close. Lamb's ultra-soft fabric and dainty legs are perfect for tiny hands to hold onto. The unique style of the WubbaNub pacifier allows it to remain close and easily position to baby. Matching **Lamb Lovey** also available.

*Actual product may slightly differ from image.

Item Box #22351
Item Polybag #32351





| SHOP ONLINE |
| SHOP IN-STORE |
| SHOP ON WUBBANUBONLINE.COM |

**THINK SAFETY** ›



CSDOCS/41279442v2



20.    From the date of the first WUBBANUB's creation to the present, Trebco is and has been the official source of the genuine WUBBANUB Products in the United States.  The current product ranges are reflected below:

CSDOCS/41279442v2



*Pacifiers*
## JIMMY FALLON COLLECTION




MAMA PENGUIN BY JIMMY FALLON          DADA MOO COW BY JIMMY FALLON

*Pacifiers*
## MAJOR LEAGUE BASEBALL ™






WUBBANUB NEW YORK YANKEES™          WUBBANUB NEW YORK YANKEES™          WUBBANUB ST. LOUIS          WUBBANUB SAN FRANCISCO
PINSTRIPE PUPPY          BEAR          CARDINALS™ BEAR          GIANTS™ BEAR

10



WUBBANUB KANSAS CITY ROYALS™ BEAR

WUBBANUB HOUSTON ASTROS™ BEAR

WUBBANUB NEW YORK METS™ BEAR

WUBBANUB LOS ANGELES DODGERS™ BEAR

WUBBANUB CHICAGO CUBS™ BEAR

WUBBANUB BOSTON RED SOX™ BEAR

*Pacifiers*

LIMITED EDITION COLLECTION

BUNBUN BUNNY

CHRISSY DINO

BUDSTER

BABY SLOTH

CAMO BEAR

MACKIE

PIGLET

BABY COW

BLUSH PINK UNICORN

MOOSE

FAIRYTALE DRAGON

HORSE

11

CSDOCS/41279442v2



PANDA

BABY PENGUIN

*Pacifiers*
## CLASSIC COLLECTION

BABY DINO

RED DOG

YELLOW DUCK

BROWN PUPPY

TABBY KITTEN

GREEN FROG

MONKEY

BABY GIRAFFE

LITTLE LION

ELEPHANT

TINY FOX

PINK KITTY

LONGHORN BULL

*Pacifiers*
## NURSERY TONES COLLECTION

PINK ELEPHANT

GREY KITTEN

BABY LION

BABY YELLOW DUCK

CSDOCS/41279442v2



LITTLE LAMB     PINK OWL     PINK BEAR     BLUE BEAR

BABY HIPPO

*Pacifiers*
EXCLUSIVES COLLECTION

TURTLE     GIRAFFE     ELEPHANT     TIGER

BROWN OWL     PENGUIN     RED DRAGON     RETRO GIRAFFE

*Pacifiers*
SEASONAL STYLES

PJ BABY BEAR     PURPLE MONSTER     WOOLY BEAR     LITTLE YETI

REINDEER     POLAR BEAR

13

21.     Trebco has expended substantial time, money, and other resources in developing, advertising, and otherwise promoting the WUBBANUB Products. As a result, products embodying the WUBBANUB Copyrights are widely recognized and exclusively associated by consumers, the public, and the trade as being products sourced from Trebco.

22.     Trebco owns all rights, including without limitation, the rights to reproduce the copyrighted works in copies, to prepare derivative works based upon the copyrighted works, and to distribute copies of the copyrighted works to the public by sale or other transfer of ownership, or by rental, lease, or lending, in the WUBBANUB Copyrights as the owner of those copyrights.

## The Defendants

23.     Defendants are individuals and business entities who, upon information and belief, reside mainly in the People's Republic of China or other foreign jurisdictions.

24.     Defendants are merchants on the Marketplace Platforms, which, upon information and belief, are owned by:

a.     eBay Inc. ("eBay"), a California corporation with a principal place of business at 2025 Hamilton Avenue, San Jose, CA 95125;

b.     Amazon.com Inc. ("Amazon"), a Washington corporation with a principal place of business at 410 Terry Avenue, North Seattle, Washington 98109;

c.     Joom SIA ("Joom"), a limited liability company organized under the laws of Latvia, with a principal place of business at 78 - 1 Gustava Zemgala gatve, Riga, LV-1039, Latvia;

d.     Alibaba Group Holding Limited ("Alibaba"), a company organized under the laws of Hong Kong with a principal place of business at 1 Matheson Street, Causeway Bay, Hong Kong;  and

14

e.      ContextLogic, Inc. ("Wish"), a Delaware corporation with a principal place of business at One Sansorne Street, 40th Floor, San Francisco, CA 94104,

through which Defendants offer for sale and/or sell Counterfeit Products.

**The Defendants' Unlawful Conduct**

25.     The success of the WUBBANUB Products has resulted in significant counterfeiting.

26.     Plaintiff has identified numerous domain names linked to fully interactive websites and marketplace listings on platforms such as the Marketplace Platforms, including the Defendants' Merchant Storefronts, which were offering for sale, selling, and importing counterfeit WUBBANUB Products to consumers in this Judicial District and throughout the United States, including Defendant Merchant Storefronts offering for sale, selling, and importing counterfeit WUBBANUB Products in association with adult content.

27.     Defendants have persisted in creating such online marketplaces and internet stores, like the Defendants' Merchant Storefronts.  In fact, such online marketplaces and stores are estimated to receive tens of millions of visits per year and to generate over $135 billion in annual online sales. According to an intellectual property rights seizures statistics report issued by the United States Department of Homeland Security, the manufacturer's suggested retail price ("MSRP") of goods seized by the U.S. government in fiscal year 2017 was over $1.2 billion. Internet websites like the Defendant Internet Stores are also estimated to contribute to tens of thousands of lost jobs for legitimate businesses and broader economic damages such as lost tax revenue every year.

28.     On personal knowledge and belief, Defendants facilitate sales by designing the Defendants' Merchant Storefronts so that they appear to unknowing

CSDOCS/41279442v2

consumers to be authorized online retailers, outlet stores, or wholesalers selling genuine WUBBANUB Products.

29.    Many of the Defendants' Merchant Storefronts look sophisticated and accept payment in U.S. dollars via credit cards, Western Union, and PayPal. Defendant Internet Stores often include images and design elements that make it very difficult for consumers to distinguish such counterfeit sites from an authorized website.

30.    Defendants further perpetuate the illusion of legitimacy by offering "live 24/7" customer service and using indicia of authenticity and security that consumers have come to associate with authorized retailers, including the McAfee® Security, VeriSign®, Visa®, MasterCard®, and PayPal® logos.

31.    Plaintiff has not licensed or authorized Defendants to use the WUBBANUB Copyrights, and none of the Defendants are authorized retailers of genuine WUBBANUB Products.  Moreover, Plaintiff has not licensed or authorized Defendants (or anyone for that matter) to use the WUBBANUB Copyrights or name in conjunction with, or promotion of, adult content.

32.    On personal knowledge and belief, Defendants deceive unknowing consumers by using the WUBBANUB Copyright Registration without authorization within the product descriptions of their Defendant Internet Stores to attract customers, as well as embodied by the counterfeit products themselves.

33.    On personal knowledge and belief, Defendants also deceive unknowing consumers by using unauthorized search engine optimization ("SEO") tactics and social media spamming so that the Defendant Internet Stores listings show up at or near the top of relevant search results and misdirect consumers searching for genuine WUBBANUB Products.

34.    Further, Defendants utilize similar illegitimate SEO tactics to propel new domain names to the top of search results after others are shut down. As such, Plaintiff also seeks to disable the Defendant Domain Names owned and/or operated by

16

Defendants that are the means by which the Defendants could continue to sell counterfeit WUBBANUB Products into this District.

35.     On information and belief, Defendants go to great lengths to conceal their identities and often use multiple fictitious names and addresses to register and operate their massive network of Defendant Internet Stores.

36.     For example, it is common practice for counterfeiters to register their domain names and/or User Accounts with incomplete information, randomly typed letters, or omitted cities or states.

37.     And many Defendant Domain Names use privacy services that conceal the owners' identity and contact information. On personal knowledge and belief, Defendants regularly create new websites and online marketplace accounts on various platforms using the identities listed in Schedule A to the Complaint, as well as other unknown fictitious names and addresses.

38.     On personal knowledge and belief, even though Defendants operate under multiple fictitious names, there are numerous similarities among the Defendants' Merchant Storefronts.  For example, some of the Defendant marketplace websites have virtually identical layouts, even though different aliases were used to register the respective domain names.

39.     In addition, the Counterfeit Products for sale in the Defendants' Merchant Storefronts bear similarities and indicia of being related to one another, suggesting that the Counterfeit Products were manufactured by and come from a common source and that, upon information and belief, Defendants are interrelated.

40.     The Defendants' Merchant Storefronts also include other notable common features, including accepted payment methods, check-out methods, meta data, illegitimate SEO tactics, HTML user-defined variables, domain redirection, lack of contact information, identically or similarly priced items and volume sales discounts, similar hosting services, similar name servers, and the use of the same text and images.

41.    In addition, Defendants in this case and defendants in other similar cases against online counterfeiters use a variety of other common tactics to evade enforcement efforts. For example, counterfeiters like Defendants will often register new online marketplace accounts under User Accounts once they receive notice of a lawsuit.[2]

42.    Counterfeiters also often move website hosting to rogue servers located outside the United States once notice of a lawsuit is received. Rogue servers are notorious for ignoring take down demands sent by brand owners.[3]

43.    Counterfeiters also typically ship products in small quantities via international mail to minimize detection by U.S. Customs and Border Protection. A 2012 U.S. Customs and Border Protection report on seizure statistics indicated that the Internet has fueled "explosive growth" in the number of small packages of counterfeit goods shipped through the mail and express carriers.

44.    Further, counterfeiters such as Defendants typically operate multiple credit card merchant accounts and PayPal accounts behind layers of payment gateways so that they can continue operation in spite of Plaintiff's enforcement efforts.

45.    On personal knowledge and belief, Defendants maintain off-shore bank accounts and regularly move funds from their PayPal accounts to off-shore bank accounts outside the jurisdiction of this Court. Indeed, analysis of PayPal transaction logs from previous similar cases indicates that offshore counterfeiters regularly move funds from U.S.-based PayPal accounts to foreign-based bank accounts outside the jurisdiction of this Court.

---

[2] https://www.ice.gov/news/releases/buyers-beware-ice-hsi-and-cbp-boston-warn-consumers-about-counterfeit-goods-during (noting counterfeiters are adept at "setting up online stores to lure the public into thinking they are purchasing legitimate good on legitimate websites") (last visited September 21, 2021).

[3] While discussed in the context of false pharma supply chains, rogue internet servers and sellers are a well-known tactic that have even been covered in congressional committee hearings. https://www.govinfo.gov/content/pkg/CHRG-113hhrg88828/html/CHRG-113hhrg88828.htm (last visited September 21, 2021).

46.    Defendants, without any authorization or license from Plaintiff, have knowingly and willfully used and continue to use the WUBBANUB Copyrights in connection with the advertisement, distribution, offering for sale, and sale of Counterfeit Products into the United States and New York over the Internet.

47.    Each Defendant Internet Store offers shipping to the United States, including New York (in this Judicial District) and, on information and belief, each Defendant has offered to sell counterfeit WUBBANUB products into the United States, including New York (in this Judicial District).

48.    Defendants' use of the WUBBANUB Copyrights in connection with the advertising, distribution, offering for sale, and sale of Counterfeit Products is likely to cause and has caused confusion, mistake, and deception by and among consumers and is irreparably harming Plaintiff.

39.    Prior to and contemporaneous with their counterfeiting and infringing actions alleged herein, Defendants had knowledge of Plaintiff's ownership of the WUBBANUB Copyrights, of the fame and incalculable goodwill associated therewith and of the popularity and success of the WUBBANUB Products, and in bad faith proceeded to manufacture, market, develop, offer to be sold, and/or sell the Counterfeit Products.

49.    Defendants have been engaging in the illegal counterfeiting and infringing actions, as alleged herein, knowingly and intentionally, or with reckless disregard or willful blindness to Plaintiff's rights, or in bad faith, for the purpose of trading on the goodwill and reputation of Plaintiff and the WUBBANUB Products.

CSDOCS/41279442v2

**FIRST CAUSE OF ACTION**

**COPYRIGHT INFRINGEMENT**

**(17 U.S.C. § 101, et seq.)**

**[Against Defendants Designated in Schedule A to the Complaint]**

50.     Plaintiffs repeat and incorporate by reference herein its allegations contained in paragraphs 1-49 of this Complaint.

51.     Plaintiff owns all exclusive rights, including without limitation the rights to reproduce the copyrighted works in copies, to prepare derivative works based upon the copyrighted works, and to distribute copies of the copyrighted works to the public by sale or other transfer of ownership, or by rental, lease, or lending, in the WUBBANUB Copyrights, as the owner thereof.

52.     Defendants have sold, offered to sell, marketed, distributed, and advertised, and are still selling, offering to sell, marketing, distributing, and advertising products in connection with the WUBBANUB Copyright without Plaintiff's permission.

53.     Defendants had access to the WUBBANUB Products incorporating Plaintiff's registered copyright before Defendants created their online marketplace accounts.

54.     Upon information and belief, Defendants have directly copied the WUBBANUB Copyrights.

55.     Alternatively, Defendants' representations of Plaintiff's copyrights for the WUBBANUB Products in the online marketplace accounts are strikingly similar, or at the very least substantially similar to the WUBBANUB Copyrights, and constitute unauthorized copying, reproduction, distribution, creation of a derivative work, and/or public display of Plaintiff's copyrights.

56.     As just one example, Defendants deceive unknowing consumers by using the WUBBANUB Copyrights without authorization within the product descriptions of their online marketplace accounts to attract customers as follows:

CSDOCS/41279442v2



*Counterfeit WUBBANUB Products sold on exemplary Defendant Online Store*

*compared to*



BABY GIRAFFE          ELEPHANT          MONKEY

*Genuine WUBBANUB Products the subject of the federally registered*

*WUBBANUB Copyright Registrations*

57.    Defendants' exploitation of Plaintiff's copyright constitutes infringement of Plaintiff's WUBBANUB Copyright Registrations.

58.    On information and belief, Defendants' infringing acts were willful, deliberate, and committed with prior notice and knowledge of Plaintiff's copyright.

59.    Each Defendant willfully, wantonly, and in conscious disregard and intentional indifference to the rights of Plaintiff made and distributed in the United States, including this District, caused to be made and distributed in the United States, including this District, and aided, abetted, contributed to, and participated in the unauthorized making and distribution of Counterfeit Products.

21

60.    Each Defendant either knew, or should have reasonably known, that Plaintiff's WUBBANUB Products were protected by copyright and their representations infringed on Plaintiff's copyrights. Each Defendant continues to infringe upon Plaintiff's rights in and to the various copyrighted works.

61.    As a direct and proximate result of their wrongful conduct, Defendants have realized and continue to realize profits and other benefits rightfully belonging to Plaintiff. Accordingly, Plaintiff seeks an award of damages pursuant to 17 U.S.C. § 504.

62.    In addition to Plaintiff's actual damages, Plaintiff is entitled to receive the profits made by the Defendants from their wrongful acts, pursuant to 17 U.S.C. § 504(b). Each Defendant should be required to account for all gains, profits, and advantages derived by each Defendant from their acts of infringement.

63.    In the alternative, Plaintiff is entitled to, and may elect to choose statutory damages pursuant to 17 U.S.C. § 504(c), which should be enhanced by 17 U.S.C. § 504(c)(2) because of Defendants' willful copyright infringement.

64.    Plaintiffs is entitled to, and may elect to choose, injunctive relief under 17 U.S.C. § 502, enjoining any use or exploitation by Defendants of their infringing work and for an order under 17 U.S.C. § 503 that any of Defendants' infringing products be impounded and destroyed.

65.    Plaintiff seeks and is also entitled to recover reasonable attorneys' fees and costs of suit pursuant to 17 U.S.C. § 505.

66.    Plaintiff has no adequate remedy at law, and, if Defendants' actions are not enjoined, Plaintiff will continue to suffer irreparable harm to their reputation and the goodwill of its well-known WUBBANUB Copyrights.

CSDOCS/41279442v2

**SECOND CAUSE OF ACTION**

**UNFAIR COMPETITION**

**(New York Common Law)**

**[Against Defendants Designated in Schedule A]**

67.     Plaintiff repeats and incorporates by reference herein its allegations contained in paragraphs 1-66 of this Complaint.

68.     Plaintiff has not licensed or authorized Defendants to use the WUBBANUB Copyrights, and none of the Defendants are authorized retailers of genuine WUBBANUB Products.

69.     Defendants knowingly and intentionally trade upon Plaintiff's reputation and goodwill by selling and/or offering for sale products in connection with Plaintiff's WUBBANUB Copyrights.

70.     Defendants' promotion, marketing, offering for sale, and sale of Counterfeit Products has created and is creating a likelihood of confusion, mistake, and deception among the general public as to the quality, affiliation, connection, or association with Plaintiff or the origin, sponsorship, or approval of Defendants' Counterfeit products by Plaintiff.

71.     Defendants knew, or should have known, that their promotion, marketing, offering for sale, and sale of counterfeit WUBBANUB products has caused and will continue to cause confusion, mistake, and deception among purchasers, users, and the public.

72.     In fact, Defendants have fraudulently represented by their statements and actions that the Counterfeit Products are Plaintiff's products including, for example, by: (i) using SEO tactics and social media to misdirect customers seeking WUBBANUB Products to Defendants' online marketplace accounts; (ii) using deceptive advertising practices within the text and metadata of the online marketplace accounts; and (iii) taking other steps to deceive and confuse the consuming public.

23

73.     On information and belief, Defendants' conduct is willful and intentional as Defendants attempt to avoid liability by concealing their identities, using multiple fictitious names and addresses to register and operate their illegal counterfeiting operations and Defendant Internet Stores.

74.     Plaintiff has no adequate remedy at law, and Defendants' conduct has caused Plaintiff to suffer damage to its reputation and goodwill. Unless enjoined by the Court, Plaintiff will suffer future irreparable harm as a direct result of Defendants' unlawful activities.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for judgment against Defendants and each of them as follows:

1.     That Defendants, their affiliates, officers, agents, servants, employees, attorneys, confederates, and all persons acting for, with, by, through, under, or in active concert with them be temporarily, preliminarily, and permanently enjoined and restrained from:

    a.     using the WUBBANUB Copyrights or any reproductions, counterfeit copies, or colorable imitations thereof in any manner in connection with the distribution, marketing, advertising, offering for sale, or sale of any product that is not a genuine WUBBANUB Product or is not authorized by Plaintiff to be sold in connection with the WUBBANUB Copyrights;

    b.     passing off, inducing, or enabling others to sell or pass off any product as a genuine WUBBANUB Product or any other product produced by Plaintiff that is not Plaintiff's or not produced under the authorization, control, or supervision of Plaintiff and approved by Plaintiff for sale under the WUBBANUB Copyrights;

c.    committing any acts calculated to cause consumers to believe that Defendants' Counterfeit Products are those sold under the authorization, control, or supervision of Plaintiff, or are sponsored by, approved by, or otherwise connected with Plaintiff;

d.    further infringing the WUBBANUB Copyrights and damaging Plaintiff's goodwill;

e.    otherwise competing unfairly with Plaintiff in any manner;

f.    shipping, delivering, holding for sale, transferring, or otherwise moving, storing, distributing, returning, or otherwise disposing of, in any manner, products or inventory not manufactured by or for Plaintiff, nor authorized by Plaintiff to be sold or offered for sale, and which copy the WUBBANUB Copyrights or any reproductions, counterfeit copies, or colorable imitations thereof;

g.    using, linking to, transferring, selling, exercising control over, or otherwise owning any online marketplace accounts, the Defendant Domain Names, or any other domain name or Online marketplace account that is being used to sell or is the means by which Defendants could continue to sell Counterfeit Products; and

h.    operating and/or hosting online marketplace accounts at the Defendant Domain Names that are involved with the distribution, marketing, advertising, offering for sale, or sale of any product embodying the WUBBANUB Copyright Registrations or any reproduction, counterfeit copy or colorable imitation thereof that is not a genuine WUBBANUB Product or

25

not authorized by Plaintiff to be sold in connection with the

WUBBANUB Copyrights.

2.    Entry of an Order that the Marketplace Platforms, and any other online marketplace account provider:

      a.    disable and cease providing services for any accounts through which Defendants engage in the sale of Counterfeit Products, including any accounts associated with the Defendants listed on Schedule A;

      b.    disable and cease displaying any advertisements used by or associated with Defendants in connection with the sale of Counterfeit Products; and

      c.    take all steps necessary to prevent links to the Defendant Domain Names identified on Schedule A from displaying in search results, including, but not limited to, removing links to the Defendant Domain Names from any search index.

3.    That Defendants account for and pay to Plaintiff all profits realized by Defendants by reason of Defendants' unlawful acts herein alleged.

4.    In the alternative, that Plaintiff be awarded statutory damages of not less than $750 and not more than $30,000 for each and every infringement of Plaintiff's copyright pursuant to 17 U.S.C. § 504(c), which should be enhanced to a sum of not more than $150,000 by 17 U.S.C. § 504(c)(2) because of Defendants' willful copyright infringement;

5.    That Plaintiff be awarded its reasonable attorneys' fees and costs; and

6.     Award any and all other relief that this Court deems just and proper.

Dated*:* November 8, 2021                      Respectfully submitted,
New York, New York

*/s/ Michael R. Yellin*
Michael R. Yellin
COLE SCHOTZ P.C.
1325 Avenue of the Americas
19th Floor
New York, New York 10019
201-525-6258
myellin@coleschotz.com
Attorneys     for     Plaintiff,     Trebco
Specialty Products Inc.

27